NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

**SIN HANG LEE,**
*Plaintiff-Appellant*

**v.**

**UNITED STATES,**
*Defendant-Appellee*

2019-2060

Appeal from the United States Court of Federal Claims in No. 1:18-cv-00686-LKG, Judge Lydia Kay Griggsby.

Decided: July 7, 2020

MARY ALICE LEONHARDT, Moore Leonhardt & Associates LLC, Hartford, CT, argued for plaintiff-appellant.

GALINA I. FOMENKOVA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for defendant-appellee. Also represented by JOSEPH H. HUNT, ROBERT EDWARD KIRSCHMAN, JR., LOREN MISHA PREHEIM; HEATHER HUNTLEY, Centers for Disease Control and Prevention, Atlanta, GA.

Before PROST, *Chief Judge,* REYNA and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Dr. Sin Hang Lee appeals the United States Court of Federal Claims' decision dismissing his amended complaint for failure to sufficiently allege facts demonstrating formation of an implied-in-fact contract with the Centers for Disease Control and Prevention. Because we conclude that the trial court did not err in holding that Dr. Lee's amended complaint failed to allege an offer to contract, acceptance, or authority to contract, we affirm.

## BACKGROUND

Dr. Lee filed a complaint in the Court of Federal Claims asserting a breach of contract claim against the Centers for Disease Control and Prevention (CDC). Following the Government's motion to dismiss Dr. Lee's complaint, Dr. Lee filed an amended complaint. Dr. Lee's amended complaint alleged that he had developed a "no-false-positive DNA sequencing-based molecular test for accurate diagnosis of Lyme disease," and further asserted that the CDC had promised through various communications that "if [Dr. Lee's] tests performed as expected, Dr. Lee's testing would be approved as the 'gold standard'" for diagnosis of early Lyme disease. Amended Complaint ¶¶ 6, 34–35, *Lee v. United States*, No. 18-686C (Fed. Cl. Oct. 1, 2018), ECF No. 14 (hereinafter "Am. Compl.").

Relevant to this appeal, the Government moved to dismiss Dr. Lee's amended complaint for failure to state a claim upon which relief could be granted pursuant to Rule 12(b)(6) of the Rules of the Court of Federal Claims (RCFC). The trial court granted the Government's motion, holding that Dr. Lee's amended complaint failed to state a claim for breach of an implied-in-fact contract because the amended complaint did not plausibly allege an offer to contract, acceptance, or authority to contract.

Dr. Lee appeals. We have jurisdiction under 28 U.S.C. § 1295(a)(3).

## DISCUSSION

On appeal, Dr. Lee argues that the Court of Federal Claims erred in dismissing his amended complaint for failure to state a claim upon which relief could be granted. We review de novo the Court of Federal Claims' grant of a motion to dismiss under RCFC Rule 12(b)(6). *Frankel v. United States*, 842 F.3d 1246, 1249 (Fed. Cir. 2016) (citing *Prairie Cty. v. United States*, 782 F.3d 685, 688 (Fed. Cir. 2015)). "To withstand a motion to dismiss under Rule 12(b)(6) of the RCFC, a complaint must contain 'enough facts to state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "The facts as alleged 'must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).'" *Kam-Almaz v. United States*, 682 F.3d 1364, 1367–68 (Fed. Cir. 2012) (quoting *Twombly*, 550 U.S. at 555).

The trial court dismissed Dr. Lee's amended complaint for failure to sufficiently allege an offer to contract, acceptance, or authority to contract. Each of these elements is required to state a claim for the CDC's purported breach of the alleged implied-in-fact contract under which Dr. Lee would provide a test for accurate diagnosis of early Lyme disease in exchange for the CDC's endorsement of his test. *See id.* at 1368 ("An implied-in-fact contract with the government requires proof of (1) mutuality of intent, (2) consideration, (3) an unambiguous offer and acceptance, and (4) actual authority on the part of the government's representative to bind the government in contract." (quoting *Hanlin v. United States*, 316 F.3d 1325, 1328 (Fed. Cir. 2003))). We address each disputed element in turn.

I

An "offer is made by 'the manifestation of willingness to enter into a bargain, so made as to justify another person in understanding that his assent to that bargain is invited and will conclude it.'" *Anderson v. United States*, 344 F.3d 1343, 1353 (Fed. Cir. 2003) (quoting Restatement (Second) of Contracts § 24 (1981)). During oral argument, counsel for Dr. Lee argued that paragraphs 16 and 40 of the amended complaint allege a "formal offer by the CDC for Dr. Lee to be the principal researcher assisting the CDC to conduct the research project" that would utilize Dr. Lee's test as the gold standard to establish a test for the accurate diagnosis of early Lyme disease. Oral Arg. at 4:02–4:54, http://oralarguments.cafc.uscourts.gov/default.aspx?fl=19-2060.mp3; *see also id.* at 1:42–2:49.[1]

Paragraph 16 of the amended complaint alleges that the CDC agreed to "provide certain testing samples for Dr. Lee to test," and, if his results were "favorable, that additional samples would be shared by the CDC with Dr. Lee." Am. Compl. ¶ 16. It further alleges that "if the report regarding the second set of samples was received and favorable, Dr. Lee would proceed to develop a protocol for use in a national comparative study to measure the accuracy and cost effectiveness of the then currently used

---

[1]    Dr. Lee's amended complaint also alleges that "the CDC was officially . . . offering business opportunities to members of the public" through certain public conference statements of Dr. Schriefer, Chief of the Diagnostic and Reference Laboratory in the Bacterial Diseases Branch in the Division of Vector-Borne Diseases. Am. Compl. ¶¶ 13–14. During oral argument, however, counsel for Dr. Lee clarified that these statements did not represent an offer by the CDC. Oral Arg. at 3:27–4:18 ("This statement in and of itself does not represent the CDC contract offer for the research project.").

tests against Dr. Lee's" diagnostic technology.  *Id.*; *see also id.* ¶ 40 (alleging that the parties "agreed that Dr. Lee would draft a protocol on behalf of Therapeutic Research Foundation . . . to be further reviewed, edited, modified and finalized for implementation").

Contrary to Dr. Lee's assertions, paragraphs 16 and 40 fail to allege any offer by the CDC to endorse Dr. Lee's test, or even any action that the CDC promised to take to implement Dr. Lee's test in a national comparative study.  Indeed, the only CDC action these paragraphs allege is that the CDC would "provide certain testing samples" to Dr. Lee, and that it would provide "additional samples" if Dr. Lee's initial results were favorable.  *Id.* ¶ 16; *see id.* ¶ 40.  The remaining allegations of these paragraphs require action only from Dr. Lee.  Specifically, assuming the results from Dr. Lee's tests on the second set of samples were "favorable, *Dr. Lee would proceed to develop a protocol* for use in a national comparative study."  *Id.* ¶ 16 (emphasis added); *see also id.* ¶ 40.  In any event, the CDC fulfilled its alleged obligations by providing Dr. Lee with samples under two material transfer agreements (MTAs).  *Id.* ¶¶ 17, 23.  Dr. Lee acknowledges that the CDC's provision of those samples under the MTAs does not suffice to allege any intent by the CDC to enter into a broader agreement. Appellant's Br. 26 ("[T]he execution and performance of the MTAs is a separate concern from whether the parties had entered into a larger implied-in-fact contract.").  Additionally, both MTAs explicitly require that "Recipient agrees not to claim, infer, or imply Governmental endorsement of the Research Project, the institution or personnel conducting the Research Project or any resulting product(s)." J.A. 902 ¶ 7; *see also* J.A. 916 ¶ 7.

Furthermore, each alleged CDC promise beyond providing samples pursuant to the first MTA is contingent on Dr. Lee's testing "perform[ing] as expected" and producing "favorable" results "to the satisfaction of" the CDC, and Dr. Lee pleads insufficient facts to plausibly support that

this condition had been met.  *E.g.*, Am. Compl. ¶¶ 16, 34–35.  Dr. Lee alleges that he reported results from his testing of MTA samples to the CDC, but he does not sufficiently plead that his results were favorable or that the CDC was satisfied with them.  *Id.* ¶¶ 19, 26.  As evidence of the CDC's satisfaction with Dr. Lee's results, the amended complaint cites an email exchange between Dr. Lee and the CDC after Dr. Lee reported results from the first MTA samples.  *Id.* ¶ 22.  But in the cited exchange, the CDC does not mention Dr. Lee's results, let alone assess them.  J.A. 911–13.  With respect to Dr. Lee's results from the second MTA samples, the amended complaint cites only the report Dr. Lee sent to the CDC and makes a conclusory allegation that the CDC was satisfied with the results, without pleading any further detail as to how or when the CDC communicated its "satisfaction" with the results.  Am. Compl. ¶ 26; J.A. 921–27.

Given these deficiencies, we conclude that Dr. Lee's allegation that the CDC made him an offer to enter into an implied-in-fact contract under which Dr. Lee would provide a test for accurate diagnosis of early Lyme disease in exchange for the CDC's endorsement of his test "stops short of the line between possibility and plausibility." *Twombly*, 550 U.S. at 557.  Accordingly, the trial court did not err in holding that Dr. Lee failed to plead sufficient facts to support the alleged offer by the CDC.

II

Acceptance requires a "manifestation of assent to the terms" of the offer "made by the offeree in a manner invited or required by the offer." *Anderson*, 344 F.3d at 1355 (quoting Restatement (Second) of Contracts § 50(1)).  "[T]o be effective, an acceptance must *objectively* manifest the offeree's assent." *Linear Tech. Corp. v. Micrel, Inc.*, 275 F.3d 1040, 1053 (Fed. Cir. 2001) (citing *Superior Boiler Works, Inc. v. R.J. Sanders, Inc.*, 711 A.2d 628, 633 (R.I. 1998)).

The question, therefore, is whether the CDC "could reasonably believe" that Dr. Lee had accepted its alleged offer. *Id.*

Dr. Lee contends he adequately pled acceptance of the parties' larger agreement by pleading "[t]he continuing work done between" him and CDC scientists following "direct authorization of the MTAs" by Dr. Bell, the Director of the National Center for Emerging and Zoonotic Infectious Diseases. Appellant's Br. 28 (emphasis omitted) (quoting Am. Compl. ¶ 33); *see also* Am. Compl. ¶¶ 4, 34–38.[2] But Dr. Lee has not alleged that he ever communicated to anyone at the CDC that his continued research was part of a larger agreement, as opposed to reflecting his independent work enabled by the transfer of samples under the MTAs. Indeed, the MTAs expressly disavow "Governmental endorsement of the Research Project, the institution or personnel conducting the Research Project or any resulting product(s)." J.A. 902 ¶ 7; J.A. 916 ¶ 7. Accordingly, we conclude that the trial court did not err in concluding that Dr. Lee failed to plausibly allege acceptance.

## III

"An employee of the Government has implied actual authority to enter an agreement only when that authority

---

[2]    Dr. Lee's opening brief asserts that another researcher's post-conference communications with the CDC "urging the CDC to endorse Dr. Lee's" test constituted Dr. Lee's acceptance of Dr. Schriefer's public conference offer. Appellant's Br. 6 (citing J.A. 841). Counsel's oral argument clarification that Dr. Schriefer's public conference statements do not represent an offer moots this argument. *See* Oral Arg. at 3:27–4:18. Regardless, this allegation does not explain how a third-party researcher's communications with the CDC urging it to endorse Dr. Lee's testing methodology made clear to Dr. Schriefer that Dr. Lee was accepting an offer to contract.

is an 'integral part of the duties assigned to [the] government employee.'" *Liberty Ammunition, Inc. v. United States*, 835 F.3d 1388, 1402 (Fed. Cir. 2016) (alteration in original) (quoting *H. Landau & Co. v. United States*, 886 F.2d 322, 324 (Fed. Cir. 1989)).

Dr. Lee asserts that he has sufficiently pled actual authority because the CDC employees with whom he interacted are "the only CDC employees with the materials and ability to evaluate tests for Lyme disease," and "[t]hey acted under the authority and direction of Dr. Bell, who signed the MTAs." Appellant's Br. 10; *see also* Am. Compl. ¶¶ 29–30, 32. The amended complaint further alleges that "Dr. Bell's signature as the Authorized Official for Provider on both MTAs did not only indicate that she was approving of the MTAs, but it also represented the official approval of the overall contractual arrangement between the CDC and Dr. Lee." Am. Compl. ¶ 32.

Taken as true, none of Dr. Lee's allegations plausibly support the notion that any of the CDC employees with whom he interacted had actual authority to bind the CDC. Dr. Lee does not allege that any of these CDC employees are contracting officers. Nor does Dr. Lee explain how the CDC employees' "ability to evaluate new tests for Lyme disease" renders entering into contracts to develop and endorse new diagnostic technology an "integral part of the duties assigned to [these] government employee[s]." *Liberty Ammunition*, 835 F.3d at 1402 (quoting *Landau*, 886 F.2d at 324). Indeed, the document cited in the amended complaint to support Dr. Schriefer's authority (Attachment 13 to the amended complaint) suggests that Dr. Schriefer did not have the authority to enter into contracts to develop and endorse new diagnostic technology. *See* Am. Compl. ¶ 29. Instead, Attachment 13 indicates that the "CDC recommends that laboratory tests cleared or approved by FDA be used to aid in the routine diagnosis of Lyme disease," and notes that the "CDC encourages researchers to work with FDA to develop new or improved

tests for the diagnosis of Lyme disease." Attachment 13 to Am. Compl. at A074, *Lee v. United States*, No. 18-686C (Fed. Cl. Oct. 1, 2018), ECF No. 14-1. Finally, Dr. Bell's signature on the MTAs does not plausibly suggest that she possessed authority beyond the scope of the MTAs, because the MTAs are a separate concern from any larger implied-in-fact contract and expressly disavow "Governmental endorsement of the Research Project." J.A. 902 ¶ 7; J.A. 916 ¶ 7.

We therefore conclude that the trial court did not err in holding that Dr. Lee's amended complaint fails to allege that a CDC employee had the requisite actual authority to enter into the alleged implied-in-fact contract.

## CONCLUSION

We have considered the parties' remaining arguments and do not find them persuasive. For the foregoing reasons, we affirm the Court of Federal Claims' decision that Dr. Lee failed to plausibly allege an implied-in-fact contract with the CDC.

## **AFFIRMED**